**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| KING LOMBARDI ACQUISITIONS, INC. | )<br>)<br>) |
| Plaintiff, | )<br>) Case No. _____ |
| v. | )<br>) |
| ADAM PETRICOFF d/b/a Providence<br>Advisory Partners, LLC | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

**[PROPOSED] PRELIMINARY INJUNCTION ORDER**

Upon consideration of Plaintiff King Lombardi Acquisition, Inc.'s ("Franchisor") Verified Complaint and exhibits thereto, Motion for Preliminary Injunction, and Memorandum of Law, and having considered the arguments of counsel, the Court finds as follows:

1. Franchisor has a reasonable likelihood of prevailing on the merits of its claims for breach of its Franchise Agreement, including the restrictive covenants in Article 13.1 and the obligations to protect and cease use of Franchisor's Confidential Information and IP in accordance with Articles 6, 7 and 12.

2. Franchisor will suffer irreparable harm if Defendant Adam Petricoff ("Petricoff") is permitted to (i) operate a competing business in North Carolina or at any location within 40 miles of the VR® Office locations he advertised during his franchise term (specifically, Colombia, S.C., Rock Hill, S.C., Florence, S.C., Fort Mill, S.C., Hickory, N.C., Huntersville, N.C., Lake Norman, N.C., Matthews, N.C.) or any other existing VR® Office and/or (ii) use and retain Franchisor's confidential and proprietary information and assets, including its Confidential Information and IP as those terms are defined in the Franchise Agreement, to operate a competitive business.

3. The balance of equities supports issuance of preliminary injunctive relief, as Franchisor will suffer greater injury upon denial of such relief than Petricoff will suffer if relief is granted.

4. Issuance of injunctive relief will further and not disserve the public interest.

QB\97270995.4

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

5. This preliminary injunction order is hereby entered against Petricoff and his officers, agents, servants, employees, and attorneys, including any other persons who are in active concert or participation with same, who received actual notice of this order in accordance with Fed. R. Civ. Pro. 65(d)(2).

6. Petricoff is hereby preliminarily enjoined and restrained, whether alone or in concert with others, from directly or indirectly, either individually or as an employee, officer, principal, agent, or in any other capacity, from participating in, becoming associated with, providing assistance to, engaging in, or having a financial or other interest in any business, activity, enterprise or entity, which competes directly with Franchisor and its authorized VR® franchisees for a period of 24 months from the date of this Order (the "Restricted Period") in the state of North Carolina or at any location within 40 miles of his former VR® Office, any VR® Office location he advertised during his franchise term (Colombia, S.C., Rock Hill, S.C., Florence, S.C., Fort Mill, S.C., Hickory, N.C., Huntersville, N.C., Lake Norman, N.C., Matthews, N.C.), or any VR Office currently in operation (the "Restricted Area"). Without limiting the foregoing, during the Restricted Period, Petricoff shall not, directly or indirectly, solicit, market, offer or perform competitive services, including without limitation business brokerage, advisory, consulting, intermediation, exit planning, real estate, valuation and/or any other services VR® offers ("Competing Services"), to the public in the Restricted Area, whether individually, through Next Chapter Advisors LLC, or through any other business, entity or affiliation.

7. Petricoff is further enjoined and restrained from using the VR® Confidential Information and IP he acquired pursuant to the Franchise Agreement, including any alterations of same, to market, offer or perform Competing Services at any location in the United States. This Confidential Information and IP includes, without limitation, VR®'s specialized techniques, methods and training; its forms, templates, agreements, Manuals, and operating procedures; its proprietary tools, CRM and other customized databases (including PipeDrive), and marketing materials, including the websites, webpages, e-commerce data and analytics, social media, and other marketing programs and promotional materials developed and customized for the VR® Charlotte Office during the franchise term; the email addresses, phone numbers, and directory and professional listings used to operate the VR® Charlotte Office; VR®'s branding, marks, and goodwill; and/or its customer lists and CRM database.

8. In addition, Petricoff is hereby ordered to promptly, and within seven (7) days of notice of this Order, comply with all of his obligations to Franchisor under the Franchise Agreement upon and after expiration of the franchise term as set forth below:

   a. Petricoff shall cease all VR® franchise operations and shall not directly or indirectly, at any time or in any manner, use any of the IP (as defined in the Franchise Agreement) or represent himself as a present or former VR® franchisee or in any other way affiliate himself with the VR System, must immediately cease using the VR System, Marks and IP, and all stationery, signage and other materials containing Franchisor's Marks or other IP, and cease using the URL and Internet addresses used for his VR® franchise and immediately cause these URL and Internet addresses to be transferred to Franchisor.

   b. Petricoff shall cease using all telephone numbers and directory listings for his VR® franchise used at any time before expiration of the Franchise Agreement, and shall complete the transfer of control and assignment of all of his rights and interest in such phone numbers and directory listings to Franchisor, including the cell phone number he used for VR® business during the term.

   c. Petricoff shall cease using all Domain Names and E-mail Addresses for his former VR® franchise that were in use at any time before expiration of his Franchise Agreement, and complete the transfer of control and assignment of all of his rights and interest in such Domain Names and E-Mail Addresses to Franchisor, including without limitation the Gmail address Petricoff used for VR® business during the term and continued to use thereafter to market and conduct competitive business.

   d. Petricoff shall not use any reproduction or colorable imitation of the VR® IP, forms, methods of operation or undertake any other conduct either in any other business or the promotion of any other business that is likely to cause confusion, mistake or deception, or that is likely to dilute Franchisor's rights in and to the IP.

   e. Petricoff shall immediately deliver to Franchisor all tangible IP in his possession or control, and all copies and any other forms of reproductions of these materials, including anything downloaded from Franchisor's Website through normal channels or member services.

  f. Petricoff shall immediately cease to use any of Franchisor's Confidential Information in any business or otherwise, and return to us all copies of the Manuals and any other confidential materials that Franchisor has loaned to him, including without limitation, all VR® customer lists (including CRM databases), forms, templates, marketing materials, websites, Inventions, or other confidential and proprietary assets regardless of whether VR®'s Confidential Information has been altered.

  g. Without limiting the foregoing, Petricoff shall provide within ten (10) days of entry of this Order a detailed accounting identifying each items of Franchisor's Confidential Information and IP, including any copies or alterations of same, that he retained after the expiration of the Franchise Agreement and its current location.

  h. Without limiting the foregoing, Petricoff shall cease use of, and provide to Franchisor, all copies of any materials (including without limitation any marketing materials and programs, website analytics, brand standards, tools, databases, customer lists, manuals, training materials, presentations, policies, procedures, forms, templates, agreements, and/or other documentation) that he created or developed for use in any competitive business, including but not limited to NXT Chapter Advisors LLC, either (i) during the term of his franchise or (ii) using, in whole or in part, VR® Confidential Information or IP.

  i. Petricoff shall submit a written certification of his compliance with this Order, signed under penalties of perjury, within fourteen (14) days. All of Petricoff's agents, associates, servants, and those in active concert or in participation with them shall submit a written certification of compliance with this Order, signed under penalties of perjury, within fourteen (14) days of their receipt of actual notice of this Order.

9. This Order is binding upon Petricoff, his agents, associates, servants, and those in active concert or in participation with them who receive actual notice of this Order.

10. This Order remains in full force and effect until the Court renders its decision on Franchisor's request for a preliminary injunction.

11. In accordance with Article 17.3(b) of the Franchise Agreement, Franchisor is not required to post any bond.

DONE AND ORDERED in Chambers at _____, Florida, this \_day of _____.

_____
United States District Judge

Copies furnished to: All Counsel of Record

QB\97270995.4